UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
STEVEN KALMANOVITZ,                 )
                                    )    No. C14-1224RSL
                    Plaintiff,      )
            v.                      )    ORDER REGARDING SCIENS
                                    )    DEFENDANTS' MOTION FOR
DANIEL STANDEN, *et al.*,           )    SUMMARY JUDGMENT
                                    )
                    Defendants.     )
_____)

This matter comes before the Court on the "Motion for Summary Judgment by Defendants Standen, Rigas and Dameron." Dkt. # 40. Plaintiff alleges that he was owed back wages, benefits, and reimbursable expenses at the time his employer, Advanced Interactive Systems, Inc. ("AIS"), filed for Chapter 7 bankruptcy protection. He has asserted a breach of contract and a Washington Rebate Act claim against four former officers/directors of AIS seeking to recover the principal amount of $332,108.32 plus exemplary damages, costs, fees, and interest. Defendants Daniel Standen, John Rigas, and Zechariah Clifton Dameron IV were members of AIS' Board of Directors during most, if not all, of the relevant period. These three defendants were also affiliated with Sciens Capital Management LLC, a private equity firm that was heavily invested in AIS. The Sciens defendants seek dismissal of all of plaintiff's claims against them.

ORDER REGARDING SCIENS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1  Summary judgment is appropriate when, viewing the facts in the light most favorable to
2  the nonmoving party, there is no genuine issue of material fact that would preclude the entry of
3  judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial
4  responsibility of informing the district court of the basis for its motion" (Celotex Corp. v.
5  Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that
6  show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving
7  party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to
8  designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S.
9  at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . .
10 and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723
11 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the trier of fact genuine
12 issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere
13 existence of a scintilla of evidence in support of the non-moving party's position will be
14 insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049
15 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Factual disputes
16 whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a
17 motion for summary judgment. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014).
18 In other words, summary judgment should be granted where the nonmoving party fails to offer
19 evidence from which a reasonable fact finder could return a verdict in its favor.
20 FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

22  Having reviewed the memoranda, declarations, and exhibits submitted by the parties and
23 taking the evidence in the light most favorable to the non-moving party, the Court finds as
24 follows:

Plaintiff ran AIS until he was replaced as CEO and President by defendant David McGrane on May 15, 2012. Plaintiff's annual salary had been $350,000 a year, but when AIS ran into financial difficulties in 2009, plaintiff agreed to defer portions of his salary until AIS was stable again.[1] None of the defendants was involved in the negotiation or execution of any employment contract or compensation agreement between AIS and plaintiff. The Sciens defendants were, however, apprised of the deferrals and allowed them to take place as a means of capitalizing AIS when money ran short. Upon his ouster as President and CEO, plaintiff requested that AIS pay the back wages it owed. The Board of Directors – not including plaintiff – authorized payments to the other executives who had deferred compensation[2] but declined to pay plaintiff because of objections from Sciens and AIS' secured lender, Kayne Anderson Mezzanine Partners ("KAMP"). The Sciens defendants were unwilling to cross the lender who could - at any time - cut off access to AIS' funds.

Two of the Sciens defendants, Standen and Dameron, were authorized to negotiate a separation agreement with plaintiff that would resolve the claim for back wages. An agreement in principle was reached in February 2013, but it was not reduced to writing before KAMP seized control of AIS' bank accounts (as it had a contractual right to do). For approximately eight days, AIS could no longer pay anyone's wages, much less a severance package for plaintiff. One day after its accounts were frozen, the Board of Directors wrote to KAMP requesting that payroll funds be released and notifying the lender that if funds were not made available, the Board would have to terminate the company's employees. KAMP granted AIS access to over $300,000, which the Board used to pay the employees. On February 22, 2013, KAMP released its exclusive control over AIS' accounts, returning some authority to AIS.

---

[1] In 2010, plaintiff's salary was reduced to $250,000. After he was replaced as President and CEO, plaintiff was paid $50,000 per year for his service on AIS' Board of Directors.

[2] Pursuant to AIS' bylaws, the Board of Directors had the power to control the activities of AIS' President and CEO through its orders and resolutions. Dkt. # 28-5 at 4.

ORDER REGARDING SCIENS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT           -3-

Believing that KAMP would continue to provide financing, the Board – including plaintiff – decided to continue operations and held off on terminating AIS' employees. Nevertheless, at the end of February the Board unanimously voted to prepare AIS for a Chapter 7 bankruptcy filing. The Board requested additional financing from KAMP, setting forth strategic options for maximizing AIS' value for shareholders. On March 1, 2013, KAMP refused. Two days later, defendant Rigas' resignation from the Board was announced, effective February 27, 2013, and the remaining Board members resolved to discontinue AIS' operations and terminate all employees who were not involved in the Chapter 7 filing. Defendant McGrane resigned from the Board shortly thereafter. The Board, now consisting of only Standen, Dameron, and plaintiff, continued meeting and, on March 14, 2013, allocated AIS' last dollars to payroll expenses, less vacation and holiday time. Plaintiff did not receive any part of this allocation.

The Sciens defendants seek dismissal of plaintiff's claims on the grounds that (a) they were not contractually bound to pay plaintiff's wages, (b) "directors" cannot be held personally liable under the Washington Rebate Act ("WRA"), (c) individual members of a Board of Directors cannot be held liable for collective decisions, (d) reimbursable business expenses are not "wages" for purposes of RCW 49.52.050, (e) the anti-kickback provisions of the WRA do not protect decision-makers such as plaintiff, (f) plaintiff's deferral converted his wages into a loan to which the WRA does not apply, (g) the Sciens defendants did not have control over AIS' funds or the decision to withhold payment of plaintiff's wages, (h) plaintiff "knowingly submitted" to the alleged violations of the WRA, (i) plaintiff's claim for vacation pay accrued after the Sciens defendants had resigned from the Board, and (j) claims for wages and expenses that should have been paid before July 14, 2011, are time-barred. Each argument is considered below.

ORDER REGARDING SCIENS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT   -4-

### A. Breach of Contract

Plaintiff has not provided any evidence of a contract between him and the Sciens defendants and has not responded to their request for judgment on that claim. Summary judgment on the breach of contract claim is therefore appropriate.

### B. Personal Liability of "Directors"

Under Washington law, "[a]ny . . . officer, vice principal or agent of any employer . . . who . . . [w]ilfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract" "shall be liable in a civil action by the aggrieved employee . . . for twice the amount of the wages unlawfully . . . withheld . . . together with costs of suit and a reasonable sum for attorney's fees . . . ." RCW 49.52.050 and RCW 49.52.070. The Sciens defendants argue that, because "directors" are not specifically listed in RCW 49.52.050, they cannot be held personally liable under the WRA.

The Sciens defendants make no effort to show that they are not vice principals and/or agents of AIS, however. Neither term is defined in the statute, raising a presumption that the legislature intended to use their common law meanings. State v. Pacheco, 125 Wn.2d 150, 154 (1994). Under the common law, an employee who has the authority to manage the employer's business and/or supervise and direct other employees is considered a vice-principal. Ellerman v. Centerpoint Prepress, Inc., 143 Wn.2d 514, 520-21 (2001). One who is authorized by the employer to act for it is an agent. Id. at 522 (citing BLACK'S LAW DICTIONARY 85 (4th ed. 1951)). AIS, through its bylaws, authorized the directors to act on its behalf and to control the corporation's business affairs. The omission of the word "directors" from the list of liable persons is immaterial where defendants fall within the scope of the other terms used in the

statute.[3]

## C. Individual Liability for Collective Decisions

The Sciens defendants argue that they cannot be held individually liable for the collective decisions of the Board of Directors merely by virtue of their status as members. The Court agrees that simply showing that the Board wilfully and intentionally deprived plaintiff of wages would not automatically impose liability on the voting members. Individual board members may, however, be held responsible if they commit or condone wrongful acts in the course of carrying out their duties (State v. Ralph Williams' Nw. Chrysler Plymouth, Inc., 87 Wn.2d 298, 322 (1976); Schwarzmann v. Assoc. of Apartment Owners of Bridgehaven, 33 Wn. App. 397 (1982)), and that is exactly what plaintiff has alleged. It will be plaintiff's burden to show that the individual defendants – not the non-defendant Board – "[w]ilfully and with intent to deprive the employee of any part of his . . . wages" refused to pay plaintiff what he was owed in violation of RCW 49.52.050. If each named defendant directly supervised or controlled the refusal to pay his wages, a wilful withholding and personal liability under the WRA may be established and any protections offered by the business judgment rule would be negated. Ellerman, 143 Wn.2d at 521-22; Fielder v. Sterling Park Homeowners Ass'n, 914 F. Supp.2d 1222, 1228 (W.D. Wash. 2012).

For purposes of this summary judgment motion, the question is whether plaintiff has raised a genuine issue of fact regarding the Sciens defendants' personal liability under RCW 49.52.050. There is evidence in the record showing that the Sciens defendants, acting in a range of capacities including as the representatives of the majority shareholders in AIS, took steps to ensure that plaintiff went unpaid even as others received their deferred compensation packages.

---

[3] In reply, defendants appear to concede that they may be agents or vice-principals, but argue that personal liability still does not attach because the Sciens defendants did not have individual control or supervision over the payment of wages. Dkt. # 69 at 5-6. This argument was raised for the first time in reply and has not been considered beyond the analysis set forth below.

ORDER REGARDING SCIENS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT                -6-

1  A reasonable fact finder could conclude that each Sciens defendant, upon receipt of plaintiff's
2  demand for payment, chose not to pay the wages owed, instead preferring to avoid conflicts with
3  KAMP and to safeguard cash reserves for the equity investors. This is exactly the type of
4  decision-making that the legislature sought to influence when it imposed personal liability on all
5  officers, vice principals, and agents who exercise control over the payment of funds and act
6  pursuant to that authority. Ellerman, 143 Wn.2d at 521-22

> [T]he officers control the financial decisions of the corporation. . . . The officers
> decide whether to pay one debt over another (i.e., wages). The officers have the
> choice to file bankruptcy or, say, close the business and pay its debts (including
> wages). The officers decide whether to continue running an inadequately
> capitalized corporation while hoping for a change in financial position. In other
> words, the officers control the choices over how the corporation's money is used,
> and (in cases of unpaid wage claims) RCW 49.52.070 imposes personal liability
> when the officers choose not to pay wages owed.

Morgan v. Kingen, 166 Wn.2d 526, 536-37 (2009). The choices defendants made here were
wilful and intentional for purposes of establishing personal liability under the WRA. Id. at 537;
Jumamil v. Lakeside Casino, LLC, 179 Wn. App. 665, 685 (2014). A reasonable fact finder
could also find that, despite the overlay of a collective body, the individual decisions caused the
non-payment and justify personal liability under RCW 49.52.070.

**D. Claim for Reimbursement of Expenses**

The Sciens defendants seek judgment in their favor on plaintiff's claim for the
reimbursement of business expenses plaintiff incurred on behalf of AIS. RCW 49.52.050
precludes the withholding of any "wages" the "employer is obligated to pay [the] employee by
any statute, ordinance, or contract." Defendants argue that the business expenses are not "wages"
for purposes of the WRA, citing an administrative policy of the Washington Department of
Labor & Industries for the proposition that reimbursements of business expenses are not part of
the employee's "regular rate of pay." L&I Admin. Policy No. ES.A.8.1 (rev. July 15, 2014). The
cited policy provides advice regarding the employer's duty to compensate employees at an

ORDER REGARDING SCIENS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT           -7-

overtime rate of at least one and one-half times the employee's "regular rate of pay" for all hours in excess of forty in a seven-day workweek. The fact that a certain type of payment is not "regular" enough to be factored into the computation of an employee's overtime rate does not necessarily mean the payment is not "wages." The Court does not find ES.A.8.1 particularly persuasive on the issue at hand.[4]

The Supreme Court of Washington was recently asked to determine whether discretionary bonuses paid to an employee were "wages" under the WRA. LaCoursiere v. CamWest Dev., Inc., 181 Wn.2d 723 (2014). The court referred to the definition of wage contained in the Washington Minimum Wage Act and reviewed prior case law, concluding that payments that were due and owing to an employee as a matter of right and "by reason of employment" were wages. Id. at 742-44. Simply paying a bonus to an employee that is unrelated to employment is not enough, nor is the mere possibility that the employee will receive a discretionary bonus. Byrne v. Courtesy Ford, Inc., 108 Wn. App. 683, 691-92 (2001) (holding that a television unexpectedly won in a raffle by employer and given to employee was not "wages" because it was not given as compensation for work); LaCoursiere, 181 Wn.2d at 743 (once employer made the discretionary decision to award a bonus based on the work performed, the "bonus became a wage that [the employee] was 'entitled to receive from his employer, and which the employer is obligated to pay.'") (quoting State v. Carter, 18 Wn.2d 590, 621 (1943)).

Plaintiff's claim for reimbursement of business expenses turns on the meaning of "by reason of employment." A simple "but for" relationship between employment and the payment is not sufficient: otherwise, any payment made by an employer to an employee would be

---

[4] Of more relevance is L&I's definition of "wage." Admin. Policy No. ES.A.2 states that "[w]age means compensation due to an employee as a result of employment" that is paid in legal tender (as opposed to payment in kind, such as the provision of meals or lodging). Defendants do not contend that AIS reimbursed business expenses in anything other than legal tender. As discussed more fully in the test, the issue seems to be whether the business expenses are sufficiently related to the employment to be considered "wages" rather than some other form of compensation.

ORDER REGARDING SCIENS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT           -8-

considered wages because the payment would not have been made "but for" the employment relationship. That is clearly not the law in Washington. See Byrne, 108 Wn. App. at 691-92. "By reason of employment" does not, however, mean that the payment must be tied to the number of hours worked or the results obtained. In Flower v. T.R.A. Indus., Inc., 127 Wn. App. 13, 35 (2005), the court found that a signing bonus negotiated as part of a new employee's employment contract was undoubtedly "to be paid 'by reason of employment'" and was therefore wages despite the fact that no hours or performance were required in exchange. See also Durand v. HIMC Corp., 151 Wn. App. 818, 831-32 (2009) (the $20,000 negotiated to cover relocation costs and a signing bonus were treated as wages when employee filed a claim under the WRA). Only one court has dealt with a WRA claim that involved business expenses, and it ruled in favor of plaintiffs without any analysis: the defendants in that case did not contest the amounts or categories of withheld wages claimed by the plaintiffs. Chelius v. Questar Microsystems, Inc., 107 Wn. App. 678, 681 (2001).

Having reviewed the relevant case law, the intent of the legislature, and the facts of this case, the Court finds that allowable business expenses are to be paid "by reason of employment" and are therefore "wages" for purposes of the WRA. Defendants do not dispute that plaintiff made the expenditures on behalf of AIS and within the scope of the parties' employment agreement. These are not gratuitous gifts or payments wholly within the discretion of the employer, but rather monies owed to the employee to offset expenses incurred during his employment and for the benefit of the employer. The common sense meaning of "by reason of employment" is satisfied. Policy justifications also support the conclusion that reimbursable business expenses are "wages." AIS could have funded its operations up front, either with a pre-paid expense account or a company credit card, but chose instead to have its employee pay for the expenses and seek reimbursement. In essence, by agreement of the parties, the employee takes some of the wages he earned and uses them to reduce the employer's operating expenses with the understanding that he will be reimbursed. If defendants' were correct and an

employee's conversion of wages into operating expenses excludes the debt from the protections of the WRA, the legislative intent of protecting wages (LaCoursiere, 181 Wn.2d at 741) could be easily thwarted. Failure to pay the full amount of wages owed under a statute, ordinance, or contract is against the public policy of this state, and RCW 49.52.070 imposes significant penalties against the wrongdoer. Under defendants' interpretation of the word "wages," an unscrupulous employer could pay the wages owed in full, thereby avoiding the teeth provided by RCW 49.52.070, but require the employee to fund the company's operations out of those wages. This would be exactly the kind of rebate or kickback forbidden by the WRA and yet, because the debt is now characterized as unpaid business expenses instead of unpaid wages, the employee would be left with only a contract claim against the employer if the debt were not paid. The employer would have engineered a rebate of wages while avoiding double damages and attorney's fees. Plaintiff's interpretation of "wages" as including monies owed to the employee as reimbursement for allowable business expenses not only comports with the plain meaning of "by reason of employment," but also reduces the opportunities for gamesmanship and gives effect to the legislature's intent.

### E. Plaintiff Caused His Own Non-Payment

Defendants' argue that the WRA does not protect individuals like plaintiff who themselves had authority to make decisions regarding the payment or withholding of wages. Defendants offer no legal framework for this argument: the WRA is designed to protect the wages of all employees unless they knowingly submit to the violation. While it is undisputed that plaintiff agreed to defer his wages, it is not the deferral that constitutes a violation of the WRA. Rather, any violation arose when defendants wilfully and intentionally decided to withhold payment after plaintiff requested his wages. In addition, defendants ignore the fact that plaintiff's authority changed over time. Plaintiff was not in a position to authorize the payment of his deferred compensation after May 15, 2012, when he requested the funds. Plaintiff's power and authority during prior periods hardly suggests that he controlled a later decision to withhold

payment.

### F. Deferred Compensation is Actually a Loan to the Employer

Neither plaintiff nor AIS characterized the deferred compensation as a "loan" at any point leading up to this litigation or otherwise suggested that the unpaid wages fell outside the scope of the WRA simply because they were not paid on the due date.[5] The parties agreed that plaintiff's compensation would be paid at a later date to improve AIS' liquidity. Regardless of whether such an arrangement has certain characteristics of a loan, deferred compensation agreements are not unusual and have been the subject of WRA claims in the past. See Durand, 151 Wn. App. 824 (plaintiff awarded double damages and attorney's fees for deferred wages); Chelius, 107 Wn. App. at 680 (same). The Court will, as the parties had before it, treat the unpaid wages as deferred compensation subject to the protections of the WRA.

### G. Lack of Control

The Sciens defendants argue that they cannot be personally liable for the failure to pay plaintiff's wages because AIS' secured lender was "adamantly opposed to paying" plaintiff. Dkt. # 40 at 23. There is evidence from which one could conclude that plaintiff requested payment of his wages in May 2012, long before KAMP flexed its financial muscle to keep plaintiff from being paid. To the extent the Sciens defendants are arguing that it would have been impossible for them to pay plaintiff because KAMP would have cut off AIS' financing going forward, the assertion does not excuse the wilful and intentional failure to pay wages. The WRA evinces "a strong legislative intent to assure payment to employees of wages they have earned." Shilling v. Radio Holdings, Inc., 136 Wn.2d 152, 159 (1998). Taking the evidence in the light most favorable to plaintiff, one could conclude that defendants made no effort to pay the employee, instead choosing to mollify a secured creditor to avoid jeopardizing the company's financing.

---

[5] Defendants' reliance on WAC 296-128-035 is misplaced. A violation of the WRA is not excused simply because the employer also violated the regulation that establishes the payment interval.

ORDER REGARDING SCIENS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -11-

This is exactly the type of choice for which the legislature provided a remedy of exemplary damages plus fees and costs. Morgan, 166 Wn.2d at 536-37. The Sciens defendants made a choice, and a reasonable fact finder could conclude that the choice was wilful and intentional.

**H. "Knowingly Submitted"**

A defendant who wilfully deprives an employee of his wages is not liable in a civil action if the employee has "knowingly submitted" to the deprivation. RCW 49.52.070. The Sciens defendants offer no legal authority for the proposition that an agreement to defer compensation is a knowing submission to a later non-payment. A person knowingly submits to the withholding of wages when he or she "deliberately and intentionally deferred to [the employer] the decision of whether [the wages] would ever be paid." Chelius, 107 Wn. App. at 682. Here, there is evidence that plaintiff agreed to defer his salary only until AIS' finances stabilized, that he never waived his right to payment, that he expected to be paid his full salary eventually, and that AIS was aware of the deferred compensation obligation and plaintiff's expectations. In such circumstances, there is at least an issue of fact regarding whether plaintiff knowingly submitted to the non-payment. Durand, 151 Wn. App. at 837.

**I. Accrual of Vacation Pay Claim**

The Sciens defendants argue that, pursuant to company policy, plaintiff had no right to cash out unused vacation days until his employment with AIS terminated. Such payment would not be due until the next regular payday after termination. RCW 49.48.010. It is undisputed that by the time the wages came due and owing, the Sciens defendants had resigned from the AIS Board. Because AIS did not owe plaintiff payment for the vacation days until after plaintiff's employment terminated, the Sciens defendants could not have unlawfully withheld that which was not yet due. Summary judgment on plaintiff's claim for vacation pay is appropriate.[6]

---

[6] For much the same reason, defendants who left the Board before plaintiff's entitlement to wages for his final pay period or periods accrued cannot be held liable for an unlawful withholding as to those amounts.

ORDER REGARDING SCIENS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -12-

**J. Statute of Limitation**

The Sciens defendants maintain that all claims for wages earned prior to July 14, 2011, are barred by the three-year statute of limitations because plaintiff's claim accrued anew each time plaintiff received less than was his due in his paycheck. The parties agreed, however, to defer payment of part of plaintiff's wages for a period of time. Those amounts were not due as they were earned, and their recovery is not time-barred.

For all of the foregoing reasons, the Sciens defendants' motion for summary judgment (Dkt. # 40) is GRANTED in part. Plaintiff's breach of contract claim and claim for vacation pay are DISMISSED and his claim for wages and business expenses against defendant Rigas is temporally limited. The motion for summary judgment regarding all other aspects of the WRA claim is DENIED.

Dated this 21st day of December, 2015.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge